STATE FARM FIRE & CASUALTY COMPANY, Plaintiff-Appellee, v. THEASTER SHELTON *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 87—3778, 87—3877 cons.

Opinion filed November 17, 1988.

Walsh, Neville, Pappas & Mahoney, of Chicago (Ronald F. Neville, of counsel), for appellants.

Conklin & Roadhouse, of Chicago (Thomas W. Conklin, Howard L. Lieber, and Renee S. Levitt, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, State Farm Fire & Casualty Company, filed a complaint for declaratory judgment seeking a ruling that it had no duty to defend or indemnify its insured, Theaster Shelton, in a wrongful death action. The trial court granted State Farm's motion for summary judgment on its complaint, finding that since Shelton had been convicted of voluntary manslaughter for the shooting death of the victim, his actions were excluded from coverage under the insurance policy.

Shelton appeals, contending that the trial court improperly took judicial notice of the facts and results of the criminal proceeding and that the declaratory judgment action was premature.

We reverse and remand.

## BACKGROUND

On January 15, 1983, Theaster Shelton, the insured, shot and killed Thomas Haseman. The facts surrounding that incident are contained in an unpublished Supreme Court Rule 23 order (107 Ill. 2d R. 23), in which Shelton's conviction of murder after a bench trial was reduced to voluntary manslaughter by the appellate court. *People v. Shelton* (1st Dist. 1985), No. 84—1265.

Thereafter, Haseman's wife filed a wrongful death action against Shelton seeking damages. Her second amended complaint alleges in count I that the shooting was intentional. Counts II and III sound in negligence. After Shelton was served with the lawsuit, he tendered it to State Farm Fire & Casualty Company, his insurer, which agreed under a reservation of rights to defend the case. Shelton selected his own attorneys.

State Farm then filed its complaint for declaratory judgment, seeking a declaration that it had neither a duty to defend nor to indemnify Shelton because his conduct in the underlying shooting caused "intentional or expected" injury, which is excluded under the policy. State Farm moved for summary judgment on the basis that the criminal conviction for voluntary manslaughter established as a matter of law that Shelton's conduct was intended or expected.

Shelton's attorney opposed the motion without filing affidavits or other evidentiary material. He argued that the declaratory action and summary judgment motion were premature because the underlying tort suit had not been resolved and the declaratory action court's decision on the nature of the insured's conduct may improperly resolve contested issues in the tort litigation.

The trial court, believing itself bound to take judicial notice of the Rule 23 order, granted State Farm's motion for summary judgment on its complaint for declaratory relief.

OPINION

This case squarely presents the issue of whether an insurance company can get declaratory judgment that it has no duty to defend its insured in the underlying personal injury action, before the resolution of that litigation, on the grounds that the insured was convicted of an intentional crime arising out of the incident. Despite some analytical difficulties we conclude that it cannot.

Resolution of this case begins with analysis of the insurance company's duty to defend and the Illinois case law that allows a criminal conviction to be used as *prima facie*, but not conclusive, evidence of noncoverage under an insurance policy.

■ The insurer's duty to defend its insured in a lawsuit hinges upon a liberal reading of the complaint. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) Even if the complaint alleges conduct that is not covered by the policy (usually intentional tortious conduct), the insurer must defend the suit if the complaint also alleges covered conduct (negligence). (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) The rule has thus arisen that the insurer is duty bound to defend its insured whenever conduct alleged is *potentially* within policy coverage, even if the insurance company discovers that the allegations are groundless, false, or fraudulent. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335, 339; *LaRotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928, 933 (where there is doubt as to whether there is potential coverage, it is to be resolved in favor of in-

sured).) Only if it is clear on the "face" of the allegations "that the claim is beyond policy coverage" can the insurer conclude that it has no duty to defend the lawsuit. 87 Ill. App. 3d at 451, 408 N.E.2d at 933. See *Bay State v. Wilson* (1983), 96 Ill. 2d 487, 451 N.E.2d 880.

■ Notwithstanding this broad duty to defend, the insurer may establish proof after the resolution of the personal injury action that the insured's conduct is not covered under the policy, and, therefore, the insurance company has no duty to pay the judgment against the insured. See *J. Roth Builders, Inc. v. Aetna Life & Casualty Co.* (1987), 151 Ill. App. 3d 572, 503 N.E.2d 782 (in a garnishment action following a jury verdict against the insured, insurance company proved that insured's conduct in burning down a house was wilful and wanton and therefore not covered under insurance policy).

State Farm argues that its policy exclusion, which applies if the occurrence or injury to the plaintiff was "intended or expected," was established as a matter of law because of Shelton's criminal conviction. Shelton, on the other hand, maintains that the trial court improperly looked beyond the allegations of Haseman's wrongful death complaint to decide that State Farm had no duty to defend or indemnify him. We are thus faced with two, seemingly irreconcilable principles of law: (1) the duty to defend depends solely on the allegations of the complaint itself and (2) on summary judgment, the court may look beyond the complaint to such facts as appear in affidavits or depositions.

The trial court judge took judicial notice of the Rule 23 conviction, reasoning that he was not required to wear "blinders" and consider only the allegations of the complaint. Despite the seeming logic of this result, we note that it ignores the more fundamental issue of whether the declaratory judgment court is empowered to decide factual issues that are integral to the injured person's lawsuit against the insured.

■ In this regard, we are bound to follow the Illinois Supreme Court decisions that not only prohibit the declaratory judgment court from deciding such ultimate issues of fact but also adhere to the evidentiary rule that a criminal conviction is only *prima facie,* not conclusive, evidence in a civil suit. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.) In *Thornton v. Paul,* the insurance company declined to defend a lawsuit against its insured on the grounds that the insured's conduct was a battery and thus excluded from coverage. Default judgment was rendered in favor of the injured party, who then instituted a garnishment action to collect from the insurer. The insurance company attempted to introduce evidence that the insured had been convicted of a battery arising out of the incident but the

trial court held that it was estopped from asserting no coverage because of its refusal to defend. The supreme court reversed, holding that the insurer did have the right to produce in the garnishment proceedings evidence of the criminal conviction arising out of the incident. The conviction would be *prima facie,* not conclusive, evidence that could take the insured's conduct outside of the policy's coverage. In that event, there would be no duty to pay the judgment.

In the context of the insurance company's initial duty to *defend,* however, the *Thornton* court agreed with prior authority that it "would *not* be appropriate, under the facts of this case, for the insurer to seek a declaratory judgment that the insured's conduct constituted a battery and was thus beyond the coverage of the insurance policy. In such a proceeding, an issue crucial to the insured's liability in the personal injury action and also one on which punitive damages could ultimately be assessed would be determined in a purely ancillary proceeding with the plaintiff and defendant in the personal injury action both aligned on the same side as defendants in the declaratory judgment action." (Emphasis added.) (74 Ill. 2d at 159, 384 N.E.2d at 346.) The court also concluded that the insurance company's refusal to defend the lawsuit required it to reimburse its insured for the costs of the litigation.

In the pending case, State Farm's duty to defend Shelton in the Haseman lawsuit arises out of the allegations in the complaint that his conduct was negligent and thus within policy coverage. The pertinent allegation reads: "1. *** THEASTER SHELTON, had and held in his hands a certain pistol, fully loaded and ready to fire, and at said time and place did negligently and carelessly [cause] a gunshot wound in the body of THOMAS HASEMAN, specifically in the area of the neck." Other allegations in the complaint charge that Shelton intentionally shot the deceased, as indeed the criminal court determined.

■ Illinois case law holds that when a declaratory judgment court is asked to declare whether an insured's conduct is covered under a policy, it must not determine disputed factual issues that are crucial to the insured's liability in the underlying personal injury lawsuit. *E.g., Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24 (declaratory judgment court's holding that tort plaintiff's injuries were intentionally inflicted was "premature" and would be reversed because such holding might preclude injured party's right to recover against insured); *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 386 N.E.2d 529 (since issue of independent contractor status of driver was one of ultimate facts upon which injured party's recovery was predicated in underlying

action, it was improper for court in declaratory judgment action to determine which of two insurance carriers had obligation to defend driver and which policy provided primary coverage); *Grinnell Mutual Reinsurance Co. v. Frierdich* (1979), 79 Ill. App. 3d 1146, 399 N.E.2d 252 (insurer held to have duty to defend insured in action alleging intentional and "willful and wanton" conduct; proper procedure was to dismiss declaratory action without prejudice to refiling upon conclusion of personal injury suit); *Allstate Insurance Co. v. Gleason* (1964), 50 Ill. App. 2d 207, 200 N.E.2d 383 (judgment of the trial court in the declaratory action was "premature" and should be reversed). See also 18 G. Couch, Insurance §74:140, at 646 (rev. 2d ed. 1983) ("The remedy of a declaratory judgment may not be used for the purpose of testing the sufficiency of a defense in pending litigation").

The cases State Farm relies on are distinguishable. Indeed, in all but one the underlying tort judgment was resolved *before* the declaratory action on the coverage issue was held. (See, *e.g., Bay State v. Wilson* (1983), 96 Ill. 2d 487, 451 N.E.2d 880; *Shelter Mutual Insurance Co. v. Bailey* (1987), 160 Ill. App. 3d 146, 513 N.E.2d 490.) In *Shelter,* in fact, the declaratory judgment court held the insurer's motion for summary judgment in abeyance until after the personal injury action was resolved, staying the hearing on the coverage issue because it involved ultimate issue of fact common to the underlying lawsuit. In *Mid-America Fire & Marine Insurance Co. v. Smith* (1982), 109 Ill. App. 3d 1121, 441 N.E.2d 949, it appears that the underlying lawsuit was not actually resolved before the resolution of the declaratory action on the coverage issue. The court granted summary judgment to the insurance company on the grounds that the insured intended to harm the plaintiff, a fact *admitted* in the plaintiff's deposition and by a guilty plea to a criminal charge. The court granted summary judgment that the conduct was intentional and thus excluded from coverage, based on the admissions of the insured. In the pending case, Shelton has not admitted an intent to harm and in fact expressly denied it in the criminal trial.

These cases do not support State Farm's position. In fact, they support Shelton's contention that the trial court prematurely determined as a matter of law that State Farm had no duty to undertake the defense of the wrongful death suit because the results of Shelton's actions were "expected or intended" under the exclusionary clause of the policy.

■ A major purpose of declaratory relief in the insurance context is to afford a summary adjudication of questions of law, such as the construction of language in the insurance policy or the legal relation-

ship between the parties. (See *Johnson v. Cape Industries, Ltd.* (1980), 91 Ill. App. 3d 192, 414 N.E.2d 470 (question whether defendant corporation was acting as an agent or shareholder of another corporation and therefore whether it was an insured under policy was concerned only with issues of coverage and not issues crucial to determination of liability in personal injury action).) As aptly expressed by one court, declaratory judgment should not be used to force the parties to an injury action to have a "dress rehearsal" of an important issue expected to be tried in the injury action. *Employers' Fire Insurance Co. v. Beals* (1968), 103 R.I. 623, 240 A.2d 397.

The crucial point, then, is whether the construction of the exclusionary language of State Farm's policy is an issue of law independent of the ultimate issues to be resolved in the wrongful death action. State Farm maintains that the words "intentional or expected" in the policy allow the court to find Shelton's conduct in shooting Haseman to be something less than intentional, so as to require a lesser degree of proof. While we agree that "expected" is a broader concept than "intentional," it does not necessarily follow that the declaratory judgment court was compelled to find that Shelton, in shooting Haseman, expected bodily injury to be the consequence of his actions.[1] According to the Rule 23 order upon which the trial court relied, Shelton testified that he fired a warning shot into the ground, did not intend to harm Haseman, and did not remember firing the fatal shot. If the jury in the wrongful action determines that his mental state was such that he did not intend to harm the victim, it could find in his favor or find him negligent only. (We do not suggest this is likely, merely possible.) Nevertheless, in order to uphold the trial court's summary judgment on the coverage issue we would have to find—as a matter of law—that a jury could never enter a verdict favorable to Shelton, particularly on the intentional harm count. In other words, we would put ourselves in the place of the jury without benefit of hearing the testimony in the tort case.

In the pending case, had the declaratory judgment court heard the matter *following* the resolution of Haseman's civil suit and considered the trial transcript along with the criminal conviction, the court may then have been justified in entering judgment in State Farm's fa-

---

[1]Harm resulting from firing a gun may well be "foreseeable" in the abstract. Whether it is truly expected under a given set of circumstances, however, is a different issue. (See *Grinnell Mutual Reinsurance Co. v. Frierdich* (1979), 79 Ill. App. 3d 1146, 399 N.E.2d 252; *Bay State v. Wilson* (1983), 96 Ill. 2d 487, 451 N.E.2d 880.) State Farm offers no concise denotation of the term which appears in its policy and simply assumes that Shelton's conduct was at least expected, if not intentional.

vor as a matter of law. That would have been a situation similar to that found in *Bay State v. Wilson* (1983), 96 Ill. 2d 487, 451 N.E.2d 880. There, the insured shot a man in the back outside of his home and was convicted of aggravated battery. He raised no issue of self-defense during the criminal trial. The injured party filed suit alleging intentional conduct and the insurance company declined the defense on the grounds that the exclusionary clause applied. After the tort plaintiff amended his complaint to add negligence, however, the insurance company did accept the defense under a reservation of rights. The plaintiff offered to settle for the policy limits before trial, but the insurance company refused and filed a declaratory judgment action as to coverage. The tort plaintiff then voluntarily dismissed the intentional tort count and went to trial on negligence, winning a judgment. Thereafter the issues raised in the declaratory judgment proceedings, which had been in abeyance pending the tort action, were heard. On the question of insurance coverage, the insurance company offered the criminal conviction as evidence that it had no duty to indemnify the insured for the judgment. The trial court nevertheless entered judgment against the insurance company.

The appellate court reversed, however, finding against the insured as a matter of law based on all matters of record, including the trial transcript of the tort action. The supreme court affirmed the appellate court, specifically noting that the criminal conviction was not conclusive evidence but was properly considered along with the results of the civil action. The court noted that the insured had not raised self-defense in the criminal trial. However, he offered a stipulation in the declaratory action that he "intentionally shot [the tort plaintiff] with a reckless and wanton belief that he was acting in self defense." (96 Ill. 2d at 491, 451 N.E.2d at 881.) Whatever he meant by the stipulation, the court noted that he unquestionably had been shown to have "expected" the results of his actions under the evidence. Thus, there was no coverage under the insurance policy as a matter of law.

*Bay State* reinforces the need for a resolution of the tort litigation before the declaratory judgment court decides the coverage issue. Only then can it determine if the insurance company must indemnify the insured based on the language of the policy.

At the duty-to-defend stage, the court cannot assume that the insured's criminal conviction alone will preclude coverage. Nor can the court adjudicate disputed facts. That is the genesis of the rule that the court must look only to the complaint to see if the allegations show that the insured's conduct is potentially within coverage. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.)

Only if the coverage issue involves such ancillary matters as whether the insured paid the premiums or whether he is the proper insured under the policy can the court look beyond the complaint. (See *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 386 N.E.2d 529.) In *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.* (1983), 122 Ill. App. 3d 301, 461 N.E.2d 471, the court noted that an insurer may challenge the existence of the duty to defend by offering evidence to prove that the insured's actions fell within a policy exclusion, adding, "The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit. [Citations.] *** If a crucial issue will not be determined, we see no reason why the party seeking a declaration of rights should not have the prerogative to present evidence that is accorded generally to a party during a motion for summary judgment in a declaratory proceeding." 122 Ill. App. 3d at 304-05, 461 N.E.2d at 474.

The Illinois Supreme Court has explained why the scope of declaratory judgment proceedings on the duty to defend is necessarily limited. *Maryland Casualty Co. v. Peppers* noted that problems of *res judicata* or collateral estoppel may arise out of the declaratory judgment court's determination of issues crucial to the insured's liability in the personal action. "Also, the order and burden of proof would be oriented to and dictated by the declaratory judgment action and not by the primary litigation, the personal injury suit." *Thornton v. Paul* (1978), 74 Ill. 2d 132, 159, 384 N.E.2d 335, 346.

State Farm fails to demonstrate why *Maryland Casualty v. Peppers, Thornton v. Paul,* and the other authorities do not control this case.

To summarize, State Farm has the duty to defend (continue paying for the defense of) the Haseman lawsuit because (1) issues of ultimate facts upon which recovery is predicated in the injured party's personal injury action must not be determined in the declaratory action and (2) the fact that Shelton was convicted of voluntary manslaughter arising out of the incident is not a conclusive adjudication of his liability in the civil suit. We believe that the trial court erred in granting State Farm summary judgment. In our opinion, the cases require us to hold that Shelton is entitled to defend against the wrongful death action by offering whatever testimony or evidence he believes will rebut the *prima facie* evidence of his liability, even though such evidence contradicts the criminal court's findings. In addition to Shelton's right to an unhampered defense in the tort action, the plaintiff should also have the opportunity to present its theories of the

case without being limited by a ruling of the declaratory judgment court. While the criminal conviction is certainly strong evidence, the supreme court holds that it is not conclusive. In any event, State Farm will be entitled to present the conviction as a defense to any duty to indemnify Shelton in supplemental proceedings following any judgment in favor of Haseman. We hold only that State Farm does have a duty to defend the Haseman lawsuit.

For the foregoing reasons, we reverse the summary judgment entered in favor of State Farm and remand to the declaratory judgment court to either dismiss the proceedings without prejudice or to stay the matter pending resolution of the wrongful death action.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.