THE TRAVELERS INSURANCE COMPANIES, Plaintiff-Appellant, v. P.C. QUOTE, INC., *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—90—0522

Opinion filed March 22, 1991.

O'Connor, Schiff & Myers, of Chicago (Loretta M. Griffin and R. Scott Sender, of counsel), for appellant.

Lundblad, Baker & Martier, of Chicago (Mary K. Bartz and Robert S. Baker, of counsel), for appellees.

JUSTICE LaPORTA delivered the opinion of the court:

The Travelers Insurance Companies (Travelers) has appealed the trial court's order granting summary judgment against it in Travelers' declaratory judgment action against P.C. Quote, its insured, and Compumat, a company suing P.C. Quote. Compumat filed a breach of contract suit against P.C. Quote in February 1988, but in September 1988, Travelers filed its declaratory judgment suit, contending that its general liability insurance policy coverage of P.C. Quote did not include the right to have Travelers defend the insured against a suit for breach of contract. The trial court granted P.C. Quote's motion for summary judgment against Travelers and ordered the insurance company to defend P.C. Quote in its pending litigation with Compumat.

In its appeal Travelers raises these issues: (1) whether the trial court erred when it interpreted the liability provisions of the insurance policy to hold that a breach of contract claim is a covered occurrence under the policy, and (2) whether the combination crime form provision of the policy can be construed as an indemnity policy for first-party claims made by the insured.

In February 1987, Travelers contracted to provide general liability insurance to P.C. Quote, a company in the business of conveying stock market quotes by personal computer. In February 1988, P.C. Quote was sued in a breach of contract action by Compumat on allegations that one of P.C. Quote's employees, whether through actual or apparent authority, had ordered and then caused to be picked up 10 computers worth $46,988.82, and that P.C. Quote failed to pay for the computers. The complaint further alleged that P.C. Quote's employee, Jim Airdo, ordered the computers in September 1987 and that "defendant, or one authorized by defendant, caused to be picked up the ten computer systems from plaintiff, and delivered to or for the benefit of

defendant." The first count of the complaint alleged that Airdo acted as an agent for the defendant with actual authority. The second count of the complaint in the alternative alleged Airdo's actions were done with apparent authority, *i.e.*, that the company knowingly permitted Airdo to represent to third parties that he was an agent of the company.

Travelers refused to represent P.C. Quote in the lawsuit and filed a declaratory judgment action contending that the general liability insurance policy did not extend to coverage of breach of contract suits. Compumat, Inc., was also named as a defendant as a necessary party to the suit. The complaint seeks construction of the language in several portions of the insurance policy.

Specifically, the comprehensive liability policy provides in pertinent part that Travelers "will pay on behalf of the insured, all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and the duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage." An "occurrence" is defined as: "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Incidental contracts, also covered under the general liability coverage, include several types of contracts not at issue here. However, an endorsement which modifies the definition of "incidental contract" includes "any oral or written contract or agreement relating to the conduct or the named insured's business."

The complaint also sought interpretation of the combination crime form portion of the insurance policy which provides coverage for employee dishonesty, defining "employee dishonesty" as "loss of money, securities and other property which the insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees, acting alone or in collusion with others."

Travelers prayed in the complaint that the court find that, under the terms of the insurance policy, Travelers was not required to defend P.C. Quote in its suit against Compumat.

The parties filed cross-motions for summary judgment, and on September 8, 1989, the trial court denied all motions for summary judgment and ordered Travelers to represent P.C. Quote in the breach of contract action. Travelers moved the court to reconsider or clarify its decision. On January 19, 1990, after hearing arguments, the trial court issued a new order, granted P.C. Quote's motion for summary judg-

ment on the declaratory judgment action and ordered Travelers to defend P.C. Quote in the breach of contract suit. Travelers now appeals that order.

Both Travelers and P.C. Quote agree that the policy language permits coverage by Travelers where there is an "occurrence" which results in property damage sustained by the insured which is "neither expected nor intended." An endorsement to the insurance policy which further defines the insurer's liability provides a second potential avenue of coverage for P.C. Quote for "incidental contracts," defined as "relating to the conduct of the named insured's business." A third potential type of coverage is found in the policy's combination crime form, which provides coverage to P.C. Quote for losses "which the insured shall sustain" through dishonest acts committed by its employees. P.C. Quote argues that the underlying breach of contract action falls within its allowable coverage at all three different points in its insurance policy.

█ Preliminarily, we note the general rule that the purpose of an insurance contract is indemnity and therefore the policy should be liberally construed with uncertainty resolved in favor of the insured. (*Reliance Insurance Co. v. Martin* (1984), 126 Ill. App. 3d 94, 96, 467 N.E.2d 287; *Illinois Produce International, Inc. v. Reliance Insurance Co.* (N.D. Ill. 1975), 388 F. Supp. 29, 35.) However, the general rules which favor the insured must yield to the paramount rule of reasonable construction which guides all contract interpretations. *Harvey Wrecking Co. v. Certain Underwriters at Lloyd's, London* (1968), 91 Ill. App. 2d 449, 456, 235 N.E.2d 385. See also *Bohnen International, Inc. v. Liberty Mutual Insurance Co.* (1983), 120 Ill. App. 3d 657, 666, 458 N.E.2d 644.

██ █ When considering whether an insurance company must defend its insured in a suit filed against it, the court must look to the complaint itself. If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy, the duty to defend has been established. (*Clemmons v. Travelers Insurance Co.* (1980), 88 Ill. 2d 469, 476, 430 N.E.2d 1104.) Though the action is for declaratory judgment, a court need not wear blinders and be limited to the allegations of the complaint. (*Bay State Insurance Co. v. Wilson* (1983), 96 Ill. 2d 487, 492, 451 N.E.2d 880.) The court in ruling on a motion for summary judgment can look beyond the complaint. (*State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 862-63, 531 N.E.2d 913.) In order to sustain a claim for potential coverage, the threshold requirements of the allegations of the complaint are min-

imal. *Management Support Associates v. Union Indemnity Insurance Co.* (1984), 129 Ill. App. 3d 1089, 1096, 473 N.E.2d 405.

In *Clemmons* the underlying complaint alleged that the driver of a car owned by the American National Red Cross caused an accident which resulted in injuries. The insurance company contended that it did not have to defend the driver because the driver did not have permission from the Red Cross to drive the car. The reviewing court found that it was unnecessary for the complaint to allege permission in order to trigger the duty to defend. The court noted that it was possible that the driver had permission. It was enough to allege facts potentially within the coverage of the policy.

The rules of law stated in *Clemmons* were followed in *Shelton*, the case relied on by the trial court when it ruled in favor of P.C. Quote. The trial court found *Shelton* to be very close to our case factually. In *Shelton* the appellate court found that the trial court erred when it ruled that an insurance company had no duty to defend its insured because the insured had been convicted of voluntary manslaughter. The court considered at length the circumstances under which a declaratory action should be allowed if an underlying suit was still pending. *Shelton*, 176 Ill. App. 3d at 861.

The *Shelton* court noted that, when considering a declaratory judgment action, the court must not determine disputed factual issues that are crucial to the insured's liability in the underlying lawsuit. The court held that the insurer had a duty to defend its insured in the underlying personal injury action because in part it alleged negligence, which was covered under the insurance policy. The *Shelton* court ruled that the trial court's grant of declaratory judgment in favor of the insurer was premature. *Shelton*, 176 Ill. App. 3d at 861.

Initially we consider whether Travelers has a duty to defend since the breach of contract action involves an "occurrence." The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

■ P.C. Quote argues that it suffered property damage in the form of lost computers for which it may be ordered to pay Compumat whether or not the computers were received by P.C. Quote. Travelers argues that the insurance policy only covers property damage to P.C. Quote, which is the insured, and not to a third party such as Compumat. We cannot agree with P.C. Quote that the loss of computers is property damage. There is a difference between damage to property and loss of property. If P.C. Quote must pay for computers it ordered

but did not receive, then someone committed theft against the company and damages sustained by the company are not property damages.

Next, P.C. Quote contends that since one of the two counts in the underlying complaint alleges its company employee acted with apparent authority when he ordered and received delivery of 10 computers, the complaint was actually alleging "civil theft" on the part of the employee which would have been neither "expected nor intended" by the company and therefore was a covered "occurrence" under the general liability policy. The allegations for breach of contract allege that P.C. Quote's employee acted either with actual or apparent authority. Travelers contends that these types of authority require action on the part of the principal and that inherent in that action is the inference that P.C. Quote "expected or intended" the agent's act, thereby eliminating the insurer's duty to defend.

■■ P.C. Quote acknowledges the existence of a principal-agent relationship but contends in its pleadings that the agent had neither the actual nor apparent authority to order the computers which were never received by the company. The underlying complaint raises the question of whether the agent had the actual or apparent authority to purchase the computers. Apparent authority in an agent is authority which the principal knowingly permits the agent to assume or that which the agent appears to possess because of action or inaction on the part of the principal. (*Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 882, 489 N.E.2d 311.) Whether the agent in reality had such authority is a question of fact. *Phipps v. Cohn* (1985), 139 Ill. App. 3d 210, 212, 487 N.E.2d 428.

■■ ■ We find that the underlying complaint does not allege an "occurrence." In insurance policies use of the word "occurrence" instead of "accident" broadens coverage and eliminates the need to find an exact cause of damages so long as they are neither expected nor intended from the standpoint of the insured. Nevertheless, the occurrence must still be accidental. (*Aetna Casualty & Surety Co. v. Freyer* (1980), 89 Ill. App. 3d 617, 619, 411 N.E.2d 1157.) An "accident" is defined as "an unforeseen occurrence, usually of untoward or disastrous character" or "an undesigned sudden or unexpected event." The natural and ordinary consequences of an act do not constitute an accident. *Aetna Casualty*, 89 Ill. App. 3d at 619.

■■ P.C. Quote fails to argue in what way the ordering of computers by its own employee can fall into the most broad and commonly used definition of accident. An accident occurs when something unexpected, unintended and unusual happens. (*Commercial Union Insur-*

*ance Co. v. Basic American Medical, Inc.* (E.D. Mich. 1989), 703 F. Supp. 629, 632.) Whether expected or not, we believe that the ordering of computers and the subsequent failure to pay for the computers cannot be considered an "accident." Therefore, we do not agree that the allegations in the complaint could be considered an "occurrence" under the general liability coverage of the policy.

Next, we consider whether the underlying contract action is covered by the insurance policy's incidental contract clause. Incidental contracts, as defined by the general liability policy, include several types of contracts not at issue here. The endorsement, however, modifies the definition of incidental contract to include "any oral or written contract or agreement relating to the conduct [of] the named insured's business."

P.C. Quote contends that the purchase of computers squarely falls within the definition of incidental contract because the company needs to buy and use computers in its business of conveying stock quotes. P.C. Quote cites no Illinois law to support this position but distinguishes a case cited by Travelers in opposition. In *Holland Corp. v. Maryland Casualty Co.* (Mo. App. 1989), 775 S.W.2d 531, the Missouri Court of Appeals found an insurer was not required to cover a loss for damages paid to the owner of a crane damaged while it was being transported by the insured. The court there found that the insured was not in the business of transporting cranes but was in the construction business. P.C. Quote distinguishes this case initially because it was decided in a foreign jurisdiction, and, secondly, on its facts since in the case before us P.C. Quote uses computers in its business and the purchase of computers is "obviously" related to its business.

Travelers argues that P.C. Quote is not in the business of buying and selling computers but is in the business of providing stock quotes to customers and that therefore a computer purchase is not related to the conduct of P.C. Quote's business. In addition, Traveler's cites *Commercial Union* (703 F. Supp. 629), which involved a contract with identical language and coverage for incidental contracts. In *Commercial Union*, the court noted that the incidental contract language was found in an exclusionary clause of the contract, just as it is here, and that such exclusionary clauses are designed to limit the general liability already provided for and not to create additional coverage. Travelers urges this court to follow that same logic, arguing that to do otherwise would open Travelers up to contract liability not intended in the original liability policy. Travelers argues that the policy was intended to limit coverage to P.C. Quote's tort liability and not to expand coverage.

P.C. Quote contended that it purchased the most comprehensive incidental coverage available to cover any contract made by the insured which relates to the conduct of the named insured's business when bodily injury or property damage might occur in relation to that agreement. In *Management Support* (129 Ill. App. 3d at 1093), the court noted that comprehensive general liability provides more extensive coverage than the specialized and limited type of "errors and omissions" coverage held by the insured in that case.

P.C. Quote urges this court to disregard *Commercial Union* inasmuch as that holding is an interpretation of Michigan insurance law. P.C. Quote further distinguishes *Commercial Union* by noting that the allegations in the complaint involved intentional conduct by the defendant, an element which P.C. Quote argues is not present here. However, Travelers contends that intentional conduct is present here since the breach of contract complaint alleges actions by an agent either with actual or apparent authority, both of which indicate an intentional act on the part of the insured.

■ We find the reasoning in the *Commercial Union* decision persuasive. The court in *Commercial Union* interpreted the plain meaning of a contract that had nearly identical language as is found here with regard to incidental contracts. That court held that the exclusionary clause for contracts could not be interpreted to expand the insurer's liability to underwrite liability for every contract related to the insured's business. Though a court may look to the parties' intentions to interpret a contract, it is equally true that the language of insurance contracts must be construed as written and the parties should be held to be bound to the agreement they made. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 496, 475 N.E.2d 872.

■ We agree with the holding in *Commercial Union* and *Manufacturers Mutual*. We note that P.C. Quote cites no more persuasive authority from this jurisdiction or any foreign jurisdiction. We find that Travelers has no duty to defend based on the incidental contract provisions found in an exclusionary clause of the general liability policy.

Finally, we consider whether the underlying contract action falls within the coverage provided in the combination crime form. The combination crime form portion of the insurance policy provides coverage for the insured's losses due to employee dishonesty. The policy defines "employee dishonesty" as "loss of money, securities and other property which the insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees, acting alone or in collusion with others."

P.C. Quote contends that count II of the complaint, which alleges apparent authority, is actually an allegation of dishonesty on the part of its employee. The insured contends that if the allegations of count II are true, then its employee picked up computers which the company never received. P.C. Quote argues that this dishonesty on the part of the employee is covered under the combination crime form and argues that the property lost is the computer equipment for which P.C. Quote may be found responsible and ordered to pay in the underlying litigation.

Travelers urges the court to consider the allegations of the complaint and not to "read in" additional facts as P.C. Quote has argued must be done. Travelers argued that the complaint alleges a simple breach of contract action and alleges no theft on the part of an employee. Travelers contends that it is only in other pleadings presented by P.C. Quote that the company suggests a theft might have occurred. Travelers further argues that P.C. Quote cannot claim a loss of property on one hand and then, in its answer to the complaint, allege as it did that it never received the computers.

In addition, Travelers points to the language in the policy which states that coverage extends to loss of money, securities or property "which the insured shall sustain." Travelers argues that the combination crime form portion of the policy is designed to indemnify the insured when an employee steals from it and is not intended as a liability policy against an action by a third party, such as Compumat, for losses the third party may have suffered because of the actions of the insured's employee.

It is not the form of the pleadings but it is the nature of the insured's conduct which determines coverage. The factual allegations of the complaint rather than the legal theory under which the action is brought will determine whether there is a duty to defend. (*Management Support*, 129 Ill. App. 3d at 1097.) The mere fact that the complaint is presented as a breach of contract action does not protect Travelers from liability, for the court must look to the conduct alleged in the language of the complaint to consider potential liability under an insurance policy. *Dominick's Finer Foods, Inc. v. American Manufacturers Mutual Insurance Co.* (1987), 163 Ill. App. 3d 149, 152, 516 N.E.2d 544.

In an action for declaratory judgment, a trial court is not confined to a consideration of the words of the complaint alone. (*Shelton*, 176 Ill. App. 3d at 862.) In *Bay State Insurance* (96 Ill. 2d 487), the supreme court went beyond the allegations in the underlying complaint of the declaratory judgment suit to consider the insured's prior crimi-

nal conviction for the same acts as those alleged as the basis for civil liability in the pending suit. There the supreme court noted that the evidence before the trial court included a court transcript of the criminal conviction admitted into evidence over defendant's objection by the plaintiff. (*Bay State Insurance*, 96 Ill. 2d at 490.) The *Shelton* court noted that in a declaratory judgment action the court in ruling on a summary judgment motion can consider information outside the complaint, such as evidence of a prior criminal conviction introduced by way of a Rule 23 order (134 Ill. 2d R. 23).

Here the complaint alleges breach of contract for nonpayment of delivered computers. The answer filed by P.C. Quote denies its receipt of the computers. In addition, P.C. Quote urges this court to interpret the complaint as alleging an employee theft.

If the allegations in Compumat's complaint are true, then P.C. Quote will be required to pay for computers it never received. However, proof that this scenario was the result of a dishonest act of an employee is irrelevant to the breach of contract action. Compumat has alleged breach of contract, not theft. All the plaintiff is required to prove is that P.C. Quote held its employee out as having authority to order and pick up the computers. Compumat is not required to prove that the employee acted dishonestly in order to recover in the underlying litigation.

Even if we were to find that the alleged conduct fit into the employee dishonesty category, this breach of contract action would still not be covered because P.C. Quote has not suffered a loss of "money, securities or property." P.C. Quote asks us to recognize that it will suffer a property loss if it must pay for the computers it never received. The policy's definition of money losses does not include judgments against the insured, and P.C. Quote cannot claim it lost "property" if it is also claiming it never received the property.

Finally, we find that the combination crime form portion of the policy is designed to indemnify P.C. Quote when an employee steals from it and that this coverage is not intended as a liability policy to protect the insured against an action by a third party.

We hold that the trial court erred in ordering Travelers to defend P.C. Quote in the underlying complaint and, accordingly, we reverse the order of the trial court which requires the insurer to defend the insured.

Judgment reversed.

RAKOWSKI, P.J., and McNAMARA, J., concur.