CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellee, v. ALLEN D. GROSSMANN *et al.*, Defendants-Appellants (Bernard M. Ellis, Defendant).

First District (5th Division)   No. 1—94—0076

Opinion filed February 24, 1995.

Daniel Cummings and John G. Dalton, both of Rothschild, Barry & Myers, of Chicago, for appellants.

Haskell & Perrin, of Chicago (John J. Lynch and Mart T. Banovetz, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Allen Grossmann, Susan Davidson and Gerald Haney (the underlying plaintiffs) sued Bernard Ellis for legal malpractice. Ellis tendered defense of the suit to Continental Casualty Company, which had issued him professional liability insurance with limits of $100,000 per claim and $300,000 per year. Continental agreed to defend under a reservation of rights, but sued Ellis and the underlying plaintiffs for a judgment declaring that Ellis' insurance policy limited Continental's liability in the underlying lawsuit to $100,000. The trial court granted Continental summary judgment and the underlying plaintiffs appeal.

The underlying plaintiffs filed four amended complaints against Ellis and John Plantan. In counts I through III of the fourth amended complaint, Grossmann, Davidson and Haney, respectively, charged Ellis and Plantan with breach of three separate contracts involving sale of stock in Springdale Corporation to each of the underlying plaintiffs. The underlying plaintiffs also charged Ellis and Plantan with fraud in counts VII, VIII and IX, and with breach of fiduciary duties in counts X, XI and XII of the complaint, all for transactions involved in the purported purchase of stock in Springdale. Only counts IV, V and VI, directed solely to Ellis, charge legal malpractice. In these counts plaintiffs allege a wide variety of negligent acts involving the purchase of Springdale stock.

Continental accepted defense of the suit and brought this action for a judgment declaring that it had no duty to indemnify Ellis or that the policy limited its liability to $100,000. Continental moved for summary judgment on only the count seeking the declaration of the $100,000 limit on its liability. Continental argued that the three underlying plaintiffs brought only one claim within the meaning of the policy, which provided:

"[T]he limit of liability stated for 'each claim' is the maximum we will pay for all claims and claim expenses arising out of, or in connection with, the same or related wrongful acts. *** This limit applies regardless of *** the number of claimants against you." (Emphasis omitted.)

The trial court agreed with Continental, finding that "the thread of these claims was *** one act[: Ellis was] lying to all these people about investing money." Since all alleged wrongful acts were related to this thread, the court held that the acts were related within the meaning of the policy, and the $100,000-per-claim limit applied. The court also held that there was no just reason to delay enforcement or appeal from its decision, which finally disposed of count I of Continental's complaint.

■ Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) establishes this court's jurisdiction to review the trial court's decision in this case. A court properly grants summary judgment on a complaint for declaratory judgment when the parties raise no genuine issue of material fact and the moving party has a clear right to summary judgment as a matter of law. (*Hall v. Country Casualty Insurance Co.* (1990), 204 Ill. App. 3d 765, 772-73, 562 N.E.2d 640.) The court deciding an insurer's right to declaratory judgment concerning its duty to defend or indemnify an insured prior to trial in the underlying lawsuit must look only to the complaint in the underlying case to determine whether the alleged conduct falls potentially within policy coverage. (*State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 866, 531 N.E.2d 913.) "The allegations of the underlying complaint must be construed liberally, and any doubt as to coverage must be resolved in favor of the insured." (*Illinois State Medical Insurance Services, Inc. v. Cichon* (1994), 258 Ill. App. 3d 803, 808, 629 N.E.2d 822.) If the underlying complaint contains any allegations which could support recovery, the trial court cannot grant the insurer a judgment absolving it from liability. See *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73, 578 N.E.2d 926.

The underlying plaintiffs, to support their argument for reversal, rely primarily on *Doe v. Illinois State Medical Inter-Insurance Exchange* (1992), 234 Ill. App. 3d 129, 599 N.E.2d 983. The appellate court there construed a professional liability insurance policy which provided that

" 'all personal injuries sustained by one or more persons arising out of a single act or omission or a series of related acts or omissions in the rendering of or failure to render professional services to any one person shall be considered one claim.' " (*Doe*, 234 Ill. App. 3d at 136.)

The court held that the phrase "related acts" was ambiguous because "the term 'related' is not defined in the policies and has no generally accepted legal meaning." (*Doe*, 234 Ill. App. 3d at 137.) Accordingly, the court found that the policy provided separate coverage for the separable claims at issue there.

Continental argues that *Doe* does not apply here because the policy in *Doe* provided coverage for liability due to " 'personal injury arising out of the rendering of or failure to render *** professional services' " during the policy period. (*Doe*, 234 Ill. App. 3d at 136.) The contract at issue here provided coverage for liability due to a "claim *** made against you" during the policy period. Continental cites authority from other jurisdictions holding that the phrase "related acts" is not ambiguous in similar policies. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insurance Co.* (1993), 5 Cal. 4th 854, 855 P.2d 1263, 21 Cal. Rptr. 2d 691; *Gregory v. Home Insurance Co.* (7th Cir. 1989), 876 F.2d 602.

While we fail to see how the change from "rendering of *** professional services" to "claim *** made" during the policy term can affect the ambiguity of the phrase "related acts" in the separate policy provision interpreted in *Doe*, we find no need to address this argument in this case. We find that even if the phrase "related wrongful acts" is unambiguous, the underlying plaintiffs in their complaint have alleged facts which could support separate liability to each underlying plaintiff for unrelated acts.

Normally, when a court seeks to determine whether a complaint alleges acts which fall within policy coverage, the court assumes the truth of the complaint's allegations and applies the policy terms to the alleged set of facts. But to declare a limit on policy coverage prior to trial on the underlying complaint, as the trial court did here, the court must find that no possible factual findings at trial on the underlying complaint could lead to liability in excess of the declared limit. (See *Wilkin Insulation*, 144 Ill. 2d at 73.) Here, the insurer's liability will not be maximized if the underlying plaintiffs prove all of their allegations, as the trial court assumed. Instead, the insurer may have greater liability if Ellis succeeds in disproving the allegation that he knowingly participated in Plantan's scheme to defraud the underlying plaintiffs. The alleged acts of malpractice become, then, entirely separate negligent mistakes, involving different transactions, different persons, and different bank accounts, related only in the coincidence that all of the acts in some way relate to various investments in or by the Springdale Corporation.

The insurer may be liable for more than $100,000 based on many sets of acts alleged in the complaint, which remain unrelated unless

the plaintiffs prove Ellis' participation in the fraudulent scheme. We have chosen one set of negligent acts, one for each of the underlying plaintiffs, as an example of one possible jury finding which would leave Ellis and Continental liable to these plaintiffs for three unrelated acts. Until the jury actually decides whether the underlying plaintiffs proved such facts, the courts cannot declare a limit of less than $300,000 for Continental's potential liability.

In count V of the fourth amended complaint, Davidson alleged that Ellis acted as attorney for both Plantan and Davidson. When Plantan persuaded Davidson to pay $30,000 for stock in Springdale, Ellis provided legal services to complete the transaction. Davidson alleged that around that time, Ellis learned that the Wisconsin State's Attorney was investigating Plantan for possible criminal fraud and that "a civil lawsuit had been filed *** alleging fraud by Plantan." Davidson adds: "Despite being aware of the criminal nature of the allegations *** Ellis did not disclose any of these facts to Davidson." Davidson alleged that Ellis negligently "failed to exercise a reasonable degree of care [and] skill *** [when he] failed to disclose Plantan's allegedly fraudulent and/or criminal conduct." Davidson alleged that because of Ellis' failure, Plantan fraudulently obtained $30,000 from Davidson, and he repaid only $15,000.

■ A complaint states a cause of action for legal malpractice if the plaintiff alleges facts showing "(1) the existence of an attorney-client relationship; (2) a duty arising from that relationship; (3) a breach of that duty; (4) causation; and (5) resulting damages." (*Coughlin v. SeRine* (1987), 154 Ill. App. 3d 510, 514, 507 N.E.2d 505.) Davidson adequately alleged the attorney-client relationship, which imposed on Ellis the duty to inform Davidson of all material facts affecting her interest in the transaction for which Ellis represented Davidson. (See *Klaskin v. Klepak* (1989), 126 Ill. 2d 376, 395, 534 N.E.2d 971.) Davidson alleged that Ellis violated that duty when he failed to disclose the criminal investigation of Plantan and the complaint claiming that Plantan committed fraud, and Davidson alleged that Ellis' breach of duty caused her monetary loss. Thus, Davidson may be able to recover from Ellis on the basis of evidence supporting these allegations, without any evidence that Ellis knew of or participated with Plantan in a scheme to defraud the three underlying plaintiffs.

In count IV Grossmann alleged that Ellis agreed to represent him when Plantan persuaded him to pay $50,000 for stock in Springdale. Grossmann alleged that he gave Ellis a check for $50,000 to be placed in a trust account in Ellis' name for safekeeping. Grossmann alleged that Ellis violated his fiduciary duties (see *In re Marriage of*

*Bennett* (1985), 131 Ill. App. 3d 1050, 1056, 476 N.E.2d 1297) when he failed to obtain Grossmann's authorization before disbursing money from the account, failed to keep adequate records of the disbursements, and permitted disbursements without determining whether the disbursements furthered Grossmann's purposes. (See 134 Ill. 2d R. 1.15.) Grossmann alleged that because of Ellis' negligence, he lost $40,000 from the account. These allegations are also sufficient to state a cause of action for legal malpractice, without any evidence of Ellis' knowing participation in a scheme to defraud Grossmann. Without evidence of Ellis' participation in an overarching scheme, the allegation here of failure to keep track of the trust account is simply unrelated to Davidson's allegation of a negligent failure to inform her of the material fact that the man from whom she intended to buy stock had been recently charged with fraud.

Similarly, Haney alleged in count VI facts which could support a finding of legal malpractice and which are unrelated to other facts which could support findings of legal malpractice harming Davidson and Grossmann. Haney alleged that Ellis, acting as attorney for Springdale, deposited Haney's check for $50,000 in an account in Springdale's name (unlike the trust account in Ellis' name into which Ellis deposited Grossmann's check), although Springdale never authorized the opening of the account. Haney alleged that he is a successor in interest to Springdale, which has been dissolved, by virtue of his $50,000 investment, and as successor in interest he sued Ellis for violation of his duty to obtain corporate authorization for opening the bank account and by failing to determine whether disbursements from the account were for corporate purposes. Haney alleged that Plantan used these funds on personal expenses and that these expenditures rendered his investment worthless.

Although the underlying plaintiffs alleged that Ellis participated with full knowledge in a scheme to defraud them, and this scheme unites all of the alleged acts leading to the underlying plaintiffs' losses, they also alleged in the alternative that Ellis acted only negligently, and his several distinct instances of malpractice led separately to the underlying plaintiffs' losses. The three underlying plaintiffs alleged largely parallel instances of malpractice. For example, Grossmann and Haney, like Davidson, alleged that Ellis neglected to tell them that Plantan had been accused of fraud and a State's Attorney was investigating Plantan for possible criminal activity. Haney and Davidson, like Grossmann, alleged that Ellis failed to keep track of the money Ellis deposited for them. Grossmann and Davidson, like Haney, alleged that they were successors in

interest to Springdale, and as such they sued Ellis for violation of his duties to the corporation.

However, each underlying plaintiff may be able to recover on the basis of acts entirely unrelated to grounds on which the others are able to recover. Thus, Haney may be able to establish that he remains a successor in interest to Springdale, while Grossmann and Davidson are unable to prove that they retain that status (especially because Grossmann and Davidson admitted receiving reimbursement of substantial portions of their investments in Springdale, while Haney alleged that he received nothing). Proof of Ellis' neglect of his duties to Springdale would then affect only Haney's recovery. The acts alleged which breach Ellis' duties to the corporation are entirely separate from and unrelated to the alleged acts breaching his duties to Davidson and Grossmann. Davidson may be able to prove that Ellis never informed her about Plantan's prior fraud, even if Ellis told Haney and Grossmann about Plantan's conduct. Grossmann may be able to show that Ellis failed to obtain Grossmann's authorization for disbursements from the trust account, even if Ellis shows that he obtained Haney's and Davidson's authorizations for disbursements from the account into which he deposited their money. Ellis' failure to obtain corporate authorization to establish an account would be unrelated to his failure to tell Davidson about Plantan's past, and both of these failings would be unrelated to his failure to keep track of disbursements of Grossmann's money from the trust account in Ellis' name.

■ We note that our analysis of this issue elucidates the potential conflict between Continental and Ellis: Ellis will have greater coverage if his wrongful acts are unrelated, but if the underlying plaintiffs prove their allegation of Ellis' knowing participation in a scheme to defraud them, Continental will be able to argue that all of Ellis' acts of malpractice could be considered, under some case authority (albeit not from Illinois), related acts within the unambiguous meaning of the policy, and therefore subject to the $100,000 limitation per claim. We do not here decide whether Continental has the right to control the defense for Ellis in the underlying suit under the standard our supreme court established in *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079, since that issue is more properly decided in the underlying lawsuit.

Because the complaint alleges facts which could support findings of three unrelated wrongful acts giving rise to three separate claims by three separate claimants against Ellis for legal malpractice, the court cannot, before trial on the underlying claims, establish that

Continental's maximum liability is only $100,000. The trial court erred when it declared such a limit.

Reversed.

COUSINS, P.J., and GORDON, J., concur.