J. ROTH BUILDERS, INC., Plaintiff-Appellant, v. AETNA LIFE AND CASUALTY COMPANY, Defendant-Appellee.

First District (4th Division) No. 86—0262

Opinion filed January 8, 1987.

Kurt G. Beranek and Francis P. Kasbohm, both of Chicago, for appellant.

Gooding & Hayes, of Chicago (Barbra L. Hayes, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff brought an action against Larry Behmer, alleging that Behmer, on September 20, 1979, had caused a fire which totally destroyed a residence in Lisle, Illinois, which was built and owned by plaintiff. Judgment was entered on a jury verdict in favor of plaintiff and against Behmer in the amount of $103,000. Plaintiff then brought this garnishment action against Aetna Life and Casualty Company (Aetna), which had issued a liability policy to Behmer. Aetna moved for summary judgment because of a clause in its policy which excluded coverage for expected or intended occurrences and the jury had found that Behmer wilfully caused the damage. Summary judg-

ment was entered in favor of Aetna. Plaintiff now appeals, contending that factual questions existed concerning whether Behmer had the mental capacity to form the intent to injure, or to have an expectation of injury, making summary judgment inappropriate.

Aetna's motion for summary judgment states that the jury in *Roth v. Behmer* was given instructions on wilful and wanton conduct and found plaintiff had met its burden of proof showing Behmer wilfully and wantonly set fire to plaintiff's premises.

In its response, plaintiff admitted that the jury had determined that Behmer was guilty of wilful and wanton conduct but pointed out that the jury did not make any findings as to the mental state of Behmer at the time of the fire. Furthermore, plaintiff claimed there was no evidence at the trial of Behmer's mental state, which was not an issue. Rather, plaintiff maintained, Behmer did not have the mental capacity necessary to form the intent to injure plaintiff's property and the exclusion did not apply. Plaintiff attached the affidavit of Dr. Bennett Braun, which stated as follows:

"1. I am Bennett G. Braun and I am in the private practice of psychiatry as Director of Associated Mental Health Services in Chicago, Illinois. The resume attached hereto as Exhibit "A" is a partial curriculum vitae and is correct and accurate.

2. I have examined Larry Behmer on August 5, 1982.

3. I am of the opinion that at the time of the fire of September 20, 1979, which the jury found to have been set by Larry Behmer, Mr. Behmer lacked the mental capacity necessary to form an intent to injure and to conform his behavior to the mandates of the law."

Aetna filed a motion to strike the Braun affidavit because: Braun examined Behmer approximately three years after the fire; Braun had no personal knowledge of Behmer at the time of the fire and consequently Braun did not allege facts of which he had personal knowledge as required by Supreme Court Rule 191 (87 Ill. 2d R. 191); Braun failed to put forth with any particularity the facts upon which he relied; Braun alleged no facts admissible in evidence to which he could testify and, in fact, admitted his incompetency in his affidavit; and paragraph 3 was an opinion without a factual basis and a conclusion contrary to Rule 191. Furthermore, Braun's discovery deposition, according to Aetna, established that he lacked sufficient knowledge since Braun stated he had conducted a one-hour interview on August 5, 1982, stated that he was "not geared" to doing a full in-depth psychiatric evaluation and was unable to express an opinion on whether Behmer had changed. Braun also indicated that he could make no

evaluation if Behmer had set the fire and Behmer never told Dr. Braun he set the fire.

As part of its motion to strike, Aetna also contended Dr. Peter Broido, who treated Behmer for his burns, was in a better position to evaluate his intent. At his deposition, Broido had testified Behmer told him "a very strange story" as to how he sustained his burns and stated that he thought Behmer "knew exactly what he was saying and doing at all times."

On June 27, 1985, the trial court entered summary judgment for Aetna. On July 26, 1985, plaintiff filed a petition for reconsideration stating that the court had expressed concern at the lack of detail in the original affidavit of Dr. Braun and seeking leave to file another affidavit containing substantial detail as to his specific findings. Plaintiff stated that Dr. Braun was now of the opinion that Behmer, at the time he set the fire, a fact already proved, was suffering from a specific psychological disease or condition known as "intermittent explosive disorder." Based on this condition, plaintiff maintained a factual question existed whether Behmer was capable of forming an intent or expectation that his conduct would cause the property damage in this case. Plaintiff, relying on *Aetna Casualty & Surety Co. v. Dichtl* (1979), 78 Ill. App. 3d 970, 398 N.E.2d 582, maintained that, if Behmer was suffering from a mental disease or defect at the time of the fire, his conduct did not fall within the policy exclusion so that this competent psychiatric testimony presented a factual issue precluding summary judgment.

Dr. Braun's supplemental affidavit stated that he examined the medical records of Dr. Daljit Kaur and Dr. Eric Van Doren and Behmer's deposition testimony; that he had been furnished information from attorney Kurt G. Beranek (plaintiff's counsel) relative to Behmer's background and had information obtained from Susan Behmer. Braun then concluded that on September 20, 1979, Behmer was suffering from intermittent explosive disorder and at that time lacked the mental capacity to control his behavior and conform to the mandates of law. Braun set forth the diagnostic criteria for such a diagnosis: (a) several discrete episodes of loss of control of aggressive impulses resulting in serious assault or destruction of property; (b) behavior that is grossly out of proportion to any precipitating source of psychological stress; (c) absence of signs of generalized impulsivity or aggressiveness between episodes; and (d) not due to schizophrenia, antisocial personality disorder or conduct disorder. Dr. Braun stated that Behmer's medical background included episodes of rage during the two-year period prior to the fire for which he sought medical at-

tention. Behmer also had a history of three head injuries in the past nine years. Prior to the fire, he had occurrences of violence which included the throwing of furniture, physical abuse of his wife, and physiological changes manifested by "bulging of the eyes." Braun stated that head trauma such as that existing in Behmer's history and his use of alcohol such as existed on the night of the fire lowered the threshold for violent outbursts characterized by the intermittent explosive disorder condition, and there was no specific evidence of generalized impulsivity or aggressiveness between episodes. In addition, immediately before the fire, Behmer had suffered a violent outburst of rage at a tavern and he got into a fight. Finally, Dr. Braun stated that, at and prior to the time of the fire, Behmer was experiencing a number of factors which impacted his mental state, including his mother developing cancer between 1978 and 1979, deterioration of his marriage, deterioration of his business affairs resulting in bankruptcy, development of ulcers, and inability to remember rage attacks documented in Dr. Kaur's records.

On December 23, 1985, after hearing argument, the court declined to vacate the order granting Aetna summary judgment and sustained the motion by Aetna to strike the supplemental affidavit. The court described the affidavits of Dr. Braun as "wholly inadequate." The court also upheld its earlier order of June 27, 1985, striking the original affidavit.

During argument on June 27, 1985, plaintiff's counsel admitted that the jury had determined Behmer set the fire and did it wilfully and wantonly. The trial court concluded that there was no coverage solely on the basis of the term "expected" as used in the policy, an issue which the Braun affidavit did not address.

Policy language identical to that in the Aetna policy in this case has been found sufficient to preclude coverage for intentional torts, such as assault, battery, false imprisonment, and intentional infliction of emotional distress. (*State Security Insurance Co. v. Globe Auto Recycling Corp.* (1986), 141 Ill. App. 3d 133, 135, 490 N.E.2d 12.) In *Aetna Casualty & Surety Co. v. Freyer* (1980), 89 Ill. App. 3d 617, 411 N.E.2d 1157, involving nearly identical policy language, the court held that no coverage was provided where an action was brought against the insured alleging he had twice struck the plaintiff and also destroyed her telephone. The court explained that, "If a single insured is allowed through intentional acts to consciously control risks covered by the policy, the central concept of insurance is violated," and the court went on to explain the manner in which such a clause should be construed (89 Ill. App. 3d 617, 620, 411 N.E.2d 1157):

"The word 'intent' for purposes of exclusionary clauses in insurance policies denotes that the actor desires to cause the consequences of his action or believes that the consequences are substantially certain to result from it. (7A Appleman, Insurance Law and Practice sec. 4492.02 (1979); *Hanover Insurance Group v. Cameron* (1973), 122 N.J. Super. 51, 298 A.2d 715.)

The policy in this case did more than exclude intentional injuries. It excluded coverage for liability for bodily injury or property damage 'which is either expected or intended from the standpoint of the insured.' We agree with Justice Moran in *Farmers Automobile Insurance Association v. Medina* (1975), 29 Ill. App. 3d 224, 329 N.E.2d 430, that these two words 'intended' and 'expected' cannot be treated as synonymous since if they were there would be no reason for the insurer to have modified the insurance clause by adding the word 'expected.' Even where the damages are not accomplished by design or plan (not intended), they may be of such a nature that they should have been reasonably anticipated (expected) by the insured. In any event, it has been recognized that damages caused by an assault and battery normally fall under an exclusion of intentional injuries or injuries intended or expected whether or not the injury was greater than that intended."

█ In this case, the trial court ruled that *Freyer* was controlling and that no material issue of fact was presented concerning whether the damage could be said to be "expected" as opposed to "intended." We believe this result is supported by the evidence and that no material issue of fact remains. (See also *Bay State Insurance Co. v. Wilson* (1983), 96 Ill. 2d 487, 494, 451 N.E.2d 880.) There is no issue on this appeal that the civil case was tried on a theory of wilful and wanton misconduct and that the jury returned a verdict in favor of plaintiff. The jury was instructed that plaintiff claimed it sustained damage and that the conduct of defendant was "wilful and wanton" in that he "recklessly and carelessly caused and permitted a match or other flammable and burning material to come in contact with one or more portions of the plaintiff's house." The jury was instructed that wilful and wanton conduct meant "a course of action which shows actual or deliberate intention to harm of which, if not intentional, shows an utter indifference to, or conscious disregard for plaintiff's property." We note that in *Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 318 N.E.2d 315, the court held in a similar context that wilful, wanton, and reckless conduct is not intentional conduct. We believe *Cowan* is distinguishable because of the language of the exclu-

sionary clause in the policy which provided coverage did not extend to "any act committed by or at the direction of the insured with the intent to cause injury or damage to person or property," which was found to be ambiguous. The policy language here, on the other hand, has been found by the courts not to be ambiguous.

Plaintiff maintains that the result in this case should be controlled by *Aetna Casualty & Surety Co. v. Dichtl* (1979), 78 Ill. App. 3d 970, 398 N.E.2d 582. The insured in that case, charged with killing her husband, was found not guilty by reason of insanity at a criminal trial. A civil action was then brought by the husband's administrator claiming the insured killed her husband and seeking an award of damages for the minor child. The insurer contended in a declaratory judgment proceeding that this action alleged only injury or damage "expected or intended" and was not covered. The trial court ruled against the insurer. The appellate court discussed the rule to be applied when considering whether the actions of an insane person are intentional within the meaning of an exclusionary provision in an insurance policy and concluded that this intent should be measured by a subjective rather than an objective standard. The court agreed with the language of Justice Moran in *Medina*, that "expected" may be defined in terms of anticipation and that a lesser degree of proof may be required to establish expectation than to establish intent, but concluded that the terms should be interpreted on the basis of a subjective, not an objective standard. Under this holding, the court said the insured would not fall within the exclusion if, at the time she inflicted the injuries, she lacked the mental capacity necessary to form the intent to injure him or the expectation of his injury and it affirmed the trial court.

█ We conclude that on this record, summary judgment was properly entered for Aetna. Under the rules governing summary judgment, plaintiff is required to come forward with some evidence to support his position. (*Gilberg v. TOYS "R" US, Inc.* (1984), 126 Ill. App. 3d 554, 558, 467 N.E.2d 947.) Aetna, the moving party, established the result of the civil action, that the insured was found to have caused the fire and that his conduct was wilful and wanton. In *Aetna Casualty & Surety Company v. Dichtl*, the court concluded that the issue of mental capacity to form the intent to injure, or expectation of injury, remained contested issues of fact. (*Aetna Casualty & Surety Co. v. Dichtl* (1979), 78 Ill. App. 3d 970, 979, 398 N.E.2d 582.) We recognize that the outcome of a civil trial may not in all circumstances determine the issue of intent to injure or expectation of injury. In this case, however, plaintiff presented no evidence to rebut the inference

of lack of coverage, *i.e.*, the inference that the insured had acted with the requisite intent or expectation. Plaintiff did file an affidavit and a supplemental affidavit in the trial court, but these were stricken.

In this court, plaintiff does not challenge the trial court's actions in striking its affidavits, apparently on the basis that the underlying judgment in the *Dichtl* decision was not supported by an affidavit or deposition either. Plaintiff argues that Dr. Braun's deposition testimony, which was taken in connection with the underlying civil trial and which was allowed to be filed as a supplemental record, suggested a strong possibility that Behmer suffered from mental and perhaps physiological disorders and this would bring into action whether he intended or expected the consequences of his actions. We disagree and under the circumstances, conclude no issue of material fact remained, that Aetna was entitled to judgment as a matter of law, and that the motion for summary judgment was properly granted.

Judgment affirmed.

McMORROW, P.J., and JOHNSON, J., concur.