VERNA B. CHANDLER *et al.*, Plaintiffs and Garnishors-Appellees, v. OTIS L. DOHERTY, Defendant (American Fire and Casualty Company, Garnishee and Citation Respondent-Appellant).

Fourth District   No. 4—98—0078

Argued August 19, 1998.—Opinion filed November 4, 1998.

Robert Marc Chemers and Daniel G. Wills (argued), both of Pretzel & Stouffer, Chartered, of Chicago, for appellant.

Michael R. Cornyn (argued), of Thomas, Mamer & Haughey, of Champaign, and Reino C. Lanto, Jr., of Rantoul, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

American Fire & Casualty Company (American Fire) refused to defend Otis Doherty when Doherty was sued in the circuit court of Champaign County by Verna and James Chandler for injuries received in an automobile accident. Verna was driving the Chandlers' car when it collided with the car driven by Doherty. Doherty had an auto insurance policy with American Fire. A default judgment was entered against Doherty. The Chandlers then sued American Fire to collect the judgment. The trial court granted summary judgment to the Chandlers, holding American Fire breached its contract with Doherty by failing to defend the Chandlers' complaint, which alleged facts raising

the potential for coverage. The trial court ruled extrinsic facts are not allowed to defeat the duty to defend where American Fire did not file a declaratory judgment action.

American Fire appeals, contending all parties involved *knew* the car being driven by Doherty was not covered under its policy, thus absolving it from a duty to defend. Further, American Fire contends even if it did have a duty to defend, the trial court's award of interest on the judgment obtained by the Chandlers from the date that judgment was rendered is error. We affirm.

## I. BACKGROUND

In 1984, Doherty purchased a new Chevrolet Celebrity and obtained insurance with American Fire from the Facer agency in Rantoul. American Fire issued an automobile liability policy for the Chevrolet with Doherty as named insured with an effective policy period of March 28, 1987, to March 28, 1988, with single limits of liability of $300,000 for each accident. The policy included an exclusion from coverage, which stated:

> "B. We do not provide Liability Coverage for the ownership, maintenance or use of:
>
> * * *
>
> 2. Any vehicle, other than your covered auto, which is:
>> a. owned by you; or
>> b. furnished or available for your regular use."

In 1986, Doherty received a 1962 Volkswagen automobile as a gift. He replaced the Volkswagen's body with the replica fiberglass body of a 1927 Bugatti, referred to by all parties as "the replicar." Doherty drove the replicar only for recreational purposes such as in parades or for display.

Doherty went to the Facer agency prior to May 1987 to see about adding the replicar to his policy with American Fire. He was told American Fire would not insure the car because it was modified. Doherty did not obtain coverage for the replicar elsewhere. He ultimately succeeded in obtaining insurance with American Fire for the replicar three months *after* the accident with the Chandlers.

On May 17, 1987, while Doherty was driving the replicar, he was involved in a collision with a car driven by Verna Chandler. Doherty reported the accident to Facer shortly afterward and was told the replicar was not on his policy with American Fire.

On November 15, 1988, the Chandlers filed an action seeking damages from Doherty for personal injuries they allegedly sustained in the accident. In their complaint, the Chandlers alleged Doherty negligently operated "his motor vehicle," thereby causing the collision. Notice of the action was given to Facer on December 20, 1988, in a letter from

counsel for Doherty, who requested a defense from American Fire. In that letter, counsel stated if he did not receive a response to the tender within 10 days he would assume coverage was being declined and he would file a declaratory action against American Fire.

On December 23 Facer forwarded the letter to American Fire. American Fire responded on March 3, 1989, by advising Doherty his policy indicated the 1962 Volkswagen was not added to the policy until August 7, 1989, several months after the date of loss and "unfortunately we will be unable to provide you any coverage for this accident." Doherty's counsel was also advised there was no coverage for the replicar. Neither Doherty nor American Fire filed a declaratory judgment action regarding American Fire's coverage.

Doherty did not appear and defend the Chandlers' lawsuit. A default judgment on liability only was entered against him on November 30, 1990. Notice of default was served upon Doherty on April 3, 1991. On April 8, Doherty sent a letter to American Fire with a copy of the notice of default and a letter he received from the Chandlers' attorney advising him it appeared American Fire was wrongfully refusing to defend him. American Fire never responded to Doherty's request for representation.

On August 19, 1993, a jury awarded the Chandlers damages in the amount of $1,618,678 and judgment was entered against Doherty in that amount.

On December 16, 1993, counsel for Doherty demanded American Fire pay the judgment. American Fire responded on March 2, 1994, advising there would be no payment and stating the replicar was not an insured vehicle.

In later citation proceedings, Doherty assigned any rights he had under the American Fire policy to the Chandlers on October 4, 1994. On August 21, 1995, the Chandlers filed their amended complaint for citation and affidavit for order of garnishment against American Fire. American Fire initially answered the amended complaint on February 14, 1996. Both American Fire and the Chandlers filed motions for summary judgment and American Fire filed a motion for leave to withdraw its answer and a motion to dismiss.

After an exchange of memoranda supporting their respective summary judgment motions, counsel for the Chandlers and for American Fire argued their motions before the trial court on October 31, 1996. In a memorandum opinion, the trial court granted partial summary judgment for the Chandlers on December 1, 1997, finding "American breached its contract with Doherty by failing to defend when the complaint alleged facts raising the potential for coverage." The trial court denied the Chandlers' motion for summary judgment in respect to

their cause of action for bad faith. The court also denied American Fire's summary judgment motion and its motion to dismiss. The court entered a judgment order January 17, 1998, in favor of the Chandlers in the amount of the $300,000 policy limit plus statutory interest at 9% on the sum of $1,618,678 from August 19, 1993, the date the judgment was entered against Doherty.

The trial court found no reason to delay enforcement or appeal of its order pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Timely notice of appeal was filed on January 27, 1998.

American Fire argues it had no duty to defend Doherty as a matter of law because the car he was driving in the accident with the Chandlers was not an insured vehicle under the policy and there was a policy exclusion specifically addressing that circumstance. Further, American Fire contends Doherty, as well as American Fire, knew this was the case at all relevant times. Thus, it was error for the trial court to grant summary judgment to the Chandlers.

## II. ANALYSIS

A trial court's grant of summary judgment is subject to a *de novo* review upon appeal. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992); *Sandstrom v. De Silva*, 268 Ill. App. 3d 932, 935, 645 N.E.2d 345, 347 (1994). Under Illinois law an insured contracts for and has a right to expect two separate and distinct duties from an insurer: (1) the duty to defend him if a claim is made against him; and (2) the duty to indemnify him if he is found legally liable for the occurrence of a covered risk. *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388, 394, 442 N.E.2d 245, 247 (1982); *Empire Fire & Marine Insurance Co. v. Clarendon Insurance Co.*, 267 Ill. App. 3d 1022, 1026, 642 N.E.2d 790, 793 (1994). The duty to defend an insured is much broader than the duty to indemnify. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393-94, 620 N.E.2d 1073, 1079 (1993). In Illinois, an insurer may be required to defend its insured even when there will ultimately be no obligation to indemnify. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 52, 514 N.E.2d 150, 163 (1987).

Under Illinois law, a liability insurer's duty to defend arises when the insured tenders defense of a suit against him that alleges facts which, when taken as true, raise the potential for coverage occurring during the effective policy period. *Empire Fire & Marine*, 267 Ill. App. 3d at 1026, 642 N.E.2d at 793. It is the law of this state that in determining whether it has a duty to defend a suit, an insurer is *limited* to comparing the bare allegations of the complaint with the face of the policy of insurance. *Crum & Forster*, 156 Ill. 2d at 393, 620

N.E.2d at 1079; *Outboard Marine*, 154 Ill. 2d at 107-08, 607 N.E.2d at 1212; *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991); *Thornton v. Paul*, 74 Ill. 2d 132, 144, 384 N.E.2d 335, 339 (1978); *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28 (1976).

The threshold a complaint must meet to present a claim for potential coverage, and thereby raise a duty to defend, is minimal. *West Bend Mutual Insurance Co. v. Sundance Homes, Inc.*, 238 Ill. App. 3d 335, 337-38, 606 N.E.2d 326, 328 (1992). Any doubts about potential coverage and the duty to defend are to be resolved in favor of the *insured*. *West Bend*, 238 Ill. App. 3d at 338, 606 N.E.2d at 328. The duty to defend is not annulled by the knowledge on the part of the insurer the allegations are untrue or incorrect or the true facts will ultimately exclude coverage. *Thornton*, 74 Ill. 2d at 144, 384 N.E.2d at 339.

In this case, the complaint alleged Doherty was driving "his motor vehicle" at the time of the accident with the Chandlers. American Fire's policy covers Doherty when he is driving his 1984 Chevrolet Celebrity. From the allegations of the complaint alone, there is *potential* coverage for Doherty for this claim, which all parties agree occurred during the effective policy period. Under established precedent in Illinois, American Fire owed a duty to defend Doherty against the claims of the Chandlers.

American Fire points out there is no Illinois case squarely on point with the issue presented here and contends the general rule is not applicable in this situation. American Fire contends it should not be required to defend its insured when both the insured and the insurer know there is no coverage. In support of its position it cites a federal circuit court case from Florida with an almost identical fact pattern. *Rowell v. Hodges*, 434 F.2d 926 (5th Cir. 1970). In *Rowell*, the insured had insured only a 1958 Cadillac but was driving a 1955 Cadillac when he was involved in an automobile accident. The complaint alleged the insured was driving "an automobile" and the insurer determined by retaining an independent adjusting firm the auto involved was the 1955 Cadillac that it did not insure. The court in *Rowell* found it to be illogical to require the insurer to defend and then prove up what it had already incontrovertibly established, the identity of the vehicle involved in the accident and the fact it was not insured, and then hand the defense of the action back to the insured. *Rowell*, 434 F.2d at 929.

The *Rowell* decision is not precedent in Illinois, but American Fire contends Illinois law itself allows for the use of extrinsic evidence by an insurance company to establish an insured's actions fall outside of

its coverage. First, American Fire contends it is not the law in Illinois that a duty to defend is owed where the complaint on its face does not preclude such a duty but, rather, there is no duty to defend where a complaint does allege facts stating how an insurance policy applies. In support of this position, American Fire cites *Tapp v. Wrightsman-Musso Insurance Agency*, 109 Ill. App. 3d 928, 441 N.E.2d 145 (1982).

In *Tapp*, the insurer insured a specific piece of property in the town of Virden and the trucking business located on it. *Tapp*, 109 Ill. App. 3d at 931, 441 N.E.2d at 147. The complaint alleged injuries occurred on a piece of property near Taylorville while the plaintiff was helping the insured dismantle and remove a building located there. *Tapp*, 109 Ill. App. 3d at 929, 441 N.E.2d at 146. The complaint did not allege *how* this action was in any way related to the property in Virden or the insured's trucking business. Therefore, a defense was denied. The court held the complaint needed to give some indication there was a reason to believe the insurance policy was related to the facts alleged, which it did not do. *Tapp*, 109 Ill. App. 3d at 933, 441 N.E.2d at 149. In other words, the court in *Tapp* actually set forth the same proposition stated earlier: the complaint must allege facts supporting a *potential* for coverage under the policy. In *Tapp*, the complaint, on its face, did not set forth facts supporting potential coverage while in the case before us, facts supporting potential coverage were alleged.

Other cases cited by American Fire in support of its position that extrinsic evidence may be offered by an insurance company to determine coverage arise from declaratory judgment proceedings, an option open to American Fire in this case, but one it chose not to pursue. See *State Farm Fire & Casualty Co. v. Shelton*, 176 Ill. App. 3d 858, 867, 531 N.E.2d 913, 919 (1988); *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05, 461 N.E.2d 471, 473-74 (1983).

Another case cited by American Fire, *J. Roth Builders, Inc. v. Aetna Life & Casualty Co.*, 151 Ill. App. 3d 572, 503 N.E.2d 782 (1987), did allow the use of extrinsic evidence, a jury's finding in the underlying suit the insured had acted wilfully and wantonly, in a garnishment proceeding against the insurance company after a verdict was entered against the insured, but there is no indication in the opinion whether the insurance company had refused to defend the insured or whether the company may have defended under a reservation of rights and then refused to pay the judgment, another option available to but not chosen by American Fire in the instant case. It is impossible to tell if *J. Roth Builders* actually supports American Fire's position.

A final case cited by American Fire in support of its position allow-

ing the use of extrinsic evidence to determine coverage is *Clemmons v. Travelers Insurance Co.*, 88 Ill. 2d 469, 430 N.E.2d 1104 (1981). In *Clemmons*, the question was whether the driver of the insured's automobile at the time of the accident was a permissive driver. The complaint did not allege the driver had the insured's permission to drive the insured automobile and the accident report contained a statement from the driver stating he did not have the permission of the insured at the time of the accident. *Clemmons*, 88 Ill. 2d at 475-76, 430 N.E.2d at 1107-08. The supreme court found the accident report did not justify a decision by the insurer to refuse to defend the insured as the duty to defend was to be determined from the language of the complaint and the policy only. *Clemmons*, 88 Ill. 2d at 476, 430 N.E.2d at 1108. The court's language after that stating the report was "not enough to dispel the potential for coverage raised by Clemmons' complaint" (*Clemmons*, 88 Ill. 2d at 476, 430 N.E.2d at 1108) because it was a layman's opinion of permissive use was *dicta*. Contrary to the assertions of American Fire, the *Clemmons* court did not find stronger extrinsic evidence under a different set of circumstances could serve to dispel the potential for coverage in a complaint.

■ American Fire argues even if it did owe a duty to defend based upon the allegations of the complaint, it was not estopped from asserting policy defenses supported by extrinsic evidence in the garnishment proceedings. However, the cases American Fire cites do not support its argument. These cases stand for the proposition an insurer can never be estopped from raising policy defenses where it *actively* seeks to adjudicate its rights and duties by seeking a summary judgment in a declaratory judgment action whether filed by the insured or the insurer. See *J.A. Jones Construction Co. v. Hartford Fire Insurance Co.*, 269 Ill. App. 3d 148, 151-52, 645 N.E.2d 980, 983 (1995); *Sears, Roebuck & Co. v. Seneca Insurance Co.*, 254 Ill. App. 3d 686, 694, 627 N.E.2d 173, 178 (1993); *Village of Melrose Park v. Nautilus Insurance Co.*, 214 Ill. App. 3d 864, 867, 574 N.E.2d 198, 199 (1991).

In Illinois where an insurer has a duty to defend but unjustifiably refuses to do so and fails to file a declaratory action to determine its obligations before trial of the original tort action, the insurer is estopped from asserting any policy exclusions or defenses in a later garnishment action by the insured or a judgment creditor. *Murphy v. Urso*, 88 Ill. 2d 444, 451, 430 N.E.2d 1079, 1082 (1981); *Thornton*, 74 Ill. 2d at 145, 384 N.E.2d at 340. In this case, American Fire did not seek to adjudicate its rights and duties under the policy in a declaratory judgment action and Doherty did not file such an action either. American Fire could have filed a declaratory judgment action before trial of the Chandler lawsuit and obtained a judicial determination on

coverage. The declaratory action would have included the participation of the Chandlers, who might well have disputed the lack of coverage with greater motivation than Doherty.

■ Illinois courts have consistently determined the tort claimant in an underlying action is a necessary party to a declaratory judgment action brought to determine insurance coverage for that claim. *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 495, 363 N.E.2d 809, 811 (1977); *Society of Mount Carmel v. National Ben Franklin Insurance Co.*, 268 Ill. App. 3d 655, 661, 643 N.E.2d 1280, 1285 (1994); *Flashner Medical Partnership v. Marketing Management, Inc.*, 189 Ill. App. 3d 45, 53, 545 N.E.2d 177, 183 (1989). Courts have based the determination the claimant in the underlying action is a necessary party on the idea such claimants have a "substantial right in the viability of the policy" (*Cheek*, 66 Ill. 2d at 495, 363 N.E.2d at 811), or they are "a real party in interest to the liability insurance contract" whose rights "vest at the time of the occurrence giving rise to his injuries." *Reagor v. Travelers Insurance Co.*, 92 Ill. App. 3d 99, 103, 415 N.E.2d 512, 514 (1980). Courts have noted a declaration of noncoverage would eliminate a source of funds to the injured party. *Flashner Medical Partnership*, 189 Ill. App. 3d at 54, 545 N.E.2d at 183. American Fire is estopped from raising policy defenses in the garnishment proceedings.

■ Illinois law is clear on this subject. We decline American Fire's invitation to change the law. The Chandlers' complaint alleged Doherty was driving his automobile when his negligent actions caused them to be injured. The insurance policy issued by American Fire covers an automobile owned by Doherty and his liability for personal injuries to others while driving it. There was potential coverage and American Fire cannot prevail here by arguing everyone knew there was no coverage. First, we do not recognize the legal efficacy of an argument suggesting everyone knew something, when the very purpose of some litigation is to resolve a dispute over who knew what and whether what they thought they knew is actually true. Certainly Doherty and his attorney thought there might be coverage because they asked American Fire to defend the lawsuit and later to pay the judgment. Further, Doherty's knowledge or belief as to coverage is not determinative on the issue of whether American Fire had a duty to defend. American Fire unjustifiably refused to defend Doherty.

■ When an insurance company unjustifiably refuses to defend its insured, the measure of damages is (1) the amount of the judgment against its insured up to the policy limits unless the insurer was guilty of negligence, fraud or bad faith in which case there is liability for the full judgment; (2) expenses incurred by the insured in defending the suit; and (3) any additional damages traceable to its refusal to defend. *Conway*, 92 Ill. 2d at 396-98, 442 N.E.2d at 248-49.

■ In this case, the trial court entered judgment for the $300,000 policy limits plus interest on the *full* amount of the judgment. If it owed a defense to Doherty, American Fire does not contest the measure of damages except it contends it was error to assess interest from the date the judgment was entered and argues the interest should run only from the date the summary judgment was entered against it. American Fire's policy specifically provided for postjudgment interest as follows:

"**Supplementary Payments**

In addition to our limit of liability, we will pay on behalf of a covered person:

* * *

3. Interest accruing after judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay part of the judgment which does not exceed our limit of liability for the coverage."

American Fire argues, under its policy, actual defense of the underlying lawsuit is a condition precedent to coverage for postjudgment interest. Because it did not participate in the underlying lawsuit, American Fire contends there is no coverage for any postjudgment interest assessed against Doherty.

We need not deal with that issue here, however, as American Fire did not raise it in the trial court. An issue not presented to the trial court is waived in nonjury civil cases. *In re Marriage of Mohr*, 260 Ill. App. 3d 98, 101, 631 N.E.2d 785, 787 (1994); *In re Marriage of Harper*, 191 Ill. App. 3d 245, 247, 547 N.E.2d 574, 575-76 (1989). Issues not raised in the trial court are not to be considered for the first time on appeal even in summary judgment cases. *Smith v. Ashley*, 29 Ill. App. 3d 932, 934, 332 N.E.2d 32, 33 (1975); *Anderson "Safeway" Guard R. Corp. v. Champaign Asphalt Co.*, 131 Ill. App. 2d 924, 929, 266 N.E.2d 414, 418-19 (1971).

The Chandlers specifically asserted their right to judgment interest from the date of the underlying judgment against Doherty in their complaint for citation and order of garnishment, their motion for summary judgment, their memorandum in support of summary judgment, and in oral arguments on the motion. American Fire never addressed the issue in its response to the Chandlers' motion for summary judgment, its cross-motion for summary judgment, its memorandum in support of its cross-motion, or even in response to the arguments of Chandlers' counsel at the oral arguments on the motions. Instead, American Fire confined itself to arguing about the applicability of interest due to the Chandlers' allegations of bad faith, allegations that American Fire argued were not properly part of a garnishment action.

American Fire addressed the issue of whether interest should have been assessed from the date judgment was entered against Doherty only in its appellate briefs. The issue has been waived.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

STEIGMANN, J., concurs.

JUSTICE McCULLOUGH, dissenting:

I respectfully dissent.

Where there is no policy to enforce, there is no duty to defend. The allegations of Chandlers' complaint carefully avoid describing in detail the nature of the vehicles involved in the collision, whether by make, model, description, or serial number. There is nothing in the complaint from which coverage of the Doherty vehicle involved in the collision by American Fire & Casualty Company can be inferred.

Doherty had one vehicle insured by American Fire & Casualty, but the vehicle that was involved in the collision was not on the policy. A partial summary of Doherty's testimony is helpful. He purchased a new Chevrolet Celebrity in 1984 and obtained insurance on the Celebrity from Facer. The 1962 Volkswagen was given to him about a year before the accident. He was also given the Bugatti body. He worked on the car for about a year, finishing it in about December 1986. In response to whether he went to Facer or any other agency to get insurance, he answered, "I asked them about it one time." Doherty does not remember when he talked to Facer. As to his reason for going to Facer, he had the other car insured at Facer and "I might as well keep both insurance policies with the same company." As to what happened:

"A. They didn't want to insure it. She said it was a modified car and they didn't have something—I don't remember. It was some kind of excuse.

Q. In other words, they didn't have to write off to somebody and get back to you and say they wouldn't cover it?

A. No.

Q. They told you that that day?

A. Yes."

As to the vehicle involved in the accident, Doherty testified he

"got nine hundred and some dollars worth of damages *** [and] I got an estimate of repairs and I sent the estimate to the insurance company, her insurance company, and they gave me a check for the amount, after investigation.

Q. You didn't make any claim for reimbursement from your own insurance company?

A. No."

The majority states the analysis should not go beyond the complaint. The cases cited by the majority do not support that conclusion.

"It is now well-established law that, in determining whether an insurer has a duty to defend its insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." *Crum & Forster Managers Corp.*, 156 Ill. 2d at 393, 620 N.E.2d at 1079.

If the subject policy is compared to the complaint in the underlying suit, there is clearly no duty to defend. The complaint merely alleges that Doherty was operating "his motor vehicle." A person may own several motor vehicles, all insured by different companies. Doherty also made reference to another vehicle he owns, apparently received from his parents. Query, if insurance was had on this vehicle with a different company, would that company also have a duty to defend? The fact that Doherty was operating one of his vehicles does not give rise to a duty to defend by American Fire & Casualty. The failure in the complaint, not specifically identifying the motor vehicle operated by Doherty at the time of the collision, gives rise to the application of the exception to the general rule, as announced in *Thornton*, 74 Ill. 2d at 151, 384 N.E.2d at 342. In *Thornton*, the supreme court discussed the brevity of the allegations of the complaint and the difficulty in determining the rights of the insured and the insurer from such allegations (*Thornton*, 74 Ill. 2d at 160-62, 384 N.E.2d at 347-48) and concluded, "if the general rule is to be applied, there should be sufficient factual allegations in the complaint to make the determination alluded to in *Maryland Casualty Co. v. Peppers*" (*Thornton*, 74 Ill. 2d at 162, 384 N.E.2d at 348). *Maryland Casualty Co.* dealt with the conflict of interest that may arise when an insurer undertakes to defend an action in which one cause of action or theory of recovery may raise an inference of coverage, but others may not. *Maryland Casualty*, 64 Ill. 2d at 193-94, 355 N.E.2d at 28.

This case provides a fact situation very similar to the fact situation presented in *Maryland Casualty*, except that the vague allegations of Chandlers' complaint against Doherty prevent the type of analysis that could resolve the coverage issue. As a result, American Fire & Casualty should have been allowed to present, and the trial court should have considered, evidence that the subject policy did not afford coverage in this case.

I agree with the statement in *Tapp* wherein this court stated:

"Although case law does state that the lack of coverage must be absolutely clear when comparing the complaint with the policy for an insurer to refuse to defend with impunity, we believe this broad statement of law presumes that the complaint gives some indication there is a reason to believe the insurance policy is relevant to the alleged facts." *Tapp*, 109 Ill. App. 3d at 933, 441 N.E.2d at 149.

Similar to *Tapp*, the allegations in the instant complaint give no indication what car owned by Doherty was involved in the accident, thereby alerting American Fire that there was potential coverage. That Doherty "was operating his motor vehicle" is inadequate.

In *Rowell*, 434 F.2d 926, a similar factual situation, the insured owned a 1958 Cadillac insured with Northwestern Mutual Insurance Company. The insured also owned a 1955 Cadillac that was not insured by Northwestern. The complaint alleged the owner was operating "an automobile." In a subsequent garnishment action, the circuit court of appeals, while recognizing the general rule requiring the insurance company to defend, stated:

"[T]he general rule does not take into account the possibility that a divergence may exist between the facts as alleged in the Petition and the actual facts as they are known to the insurer, and that the general rule does not apply where, as here, the uncontrovertible and indisputable facts, ascertained by the insurance company long before the action is commenced and confirmed by its own insured, demonstrate that there never was any insurance coverage for the casualty alleged in the first place, and that, therefore, the refusal to defend does not constitute a breach of contract but, on the contrary, is a justified refusal.

\* \* \*

In a sense, to say here that the Garnishee must gauge its obligation strictly by the pleading called a Complaint, and put blinders on, so to speak, to what it actually knows and has definitely ascertained, is somewhat archaic, considering the nature of our present system of notice pleading." *Rowell*, 434 F.2d at 929-30.

The reasoning in *Rowell* is sound. The plaintiffs were not entitled to summary judgment.