FIFTH DIVISION
May 21, 2010

No. 1-09-1862

| | | |
|---|---|---|
| NANCY LORENZO, Individually and a/s/o Persian Foods, Inc., d/b/a Reza's Restaurant, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | No. 08 CH 14578 |
| v. | ) ) | |
| CAPITOL INDEMNITY CORPORATION, PERSIAN FOODS, INC., and MIDWEST COMMERCIAL SPECIALTIES, INC., | ) ) ) ) | Honorable James Epstein, Judge Presiding. |
| Defendants-Appellants. | ) ) | |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

This cause of action arose out of a food poisoning incident suffered by plaintiff Nancy Lorenzo (Lorenzo) on March 28, 2006, while at Reza's Restaurant, located at 40 North Tower Road, Oak Brook, Illinois (Reza's Oak Brook). Defendant Capitol Indemnity Corporation (Capitol) refused to defend Persian Foods Inc., d/b/a Reza's Restaurant (Persian Foods) in Lorenzo's original suit against Persian Foods, and the trial court entered a default judgment in favor of Lorenzo. Thereafter, Lorenzo, individually and as subrogee of Persian Foods, filed a complaint for declaratory judgment. Capitol asserted affirmative defenses and counterclaimed seeking a declaration that it had no duty to defend Persian Foods or indemnify Lorenzo. Capitol then filed a motion for summary judgment on its counterclaim, while Lorenzo filed her own cross-motion for summary judgment on her complaint. The trial court granted Lorenzo's cross-motion for summary judgment, and Capitol now appeals. For the following reasons, we reverse the trial court's grant of summary judgment in favor of Lorenzo and enter judgment in favor of

No. 1-09-1862

Capitol.

## I. BACKGROUND

Reza's Oak Brook is owned and controlled by defendant Persian Foods, Inc. Lorenzo filed a personal injury claim against Persian Foods on July 9, 2007. At the time of the incident, Persian Foods carried a commercial general liability insurance policy (the Policy), with defendant Capitol Indemnity Corporation, with a $100,000 limit of liability. The Policy ran from May 9, 2005, to May 9, 2006, and extended to 15 of Persian Foods' premises listed in the Policy's schedule. At the time of Lorenzo's food poisoning, Reza's Oakbrook was not included in that schedule.

On August 9, 2007, Persian Foods, through its agent, Midwest Commercial Specialities, Inc. (Midwest), tendered Lorenzo's complaint to Capitol, asserting that Capitol had a duty do defend and indemnify Persian Foods. Capitol chose not to assume the defense of Persian Foods.

On December 13, 2007, after Persian Foods failed to appear or answer Lorenzo's complaint, the trial court entered a default judgment in favor of Lorenzo and against Persian Foods in the amount of $100,000. Persian Foods assigned any and all of its rights and interests under the Policy to Lorenzo.

On April 21, 2008, Lorenzo, individually and as subrogee of Persian Foods, filed a complaint for declaratory judgment seeking a declaration that she was entitled to coverage under the Policy and was entitled to $100,000 plus interest and costs pursuant to the default judgment entered in the original complaint. Capitol answered Lorenzo's complaint for declaratory judgment, asserted affirmative defenses, and counterclaimed seeking a declaration that it had no

2

No. 1-09-1862

duty to defend Persian Foods or to indemnify Lorenzo with regard to the underlying action. Specifically, Capitol claimed that Lorenzo's injury occurred outside of the Policy's geographic and temporal coverage because the Policy specifically stated that it applied only to injury arising out of the ownership, maintenance, or use of the premises shown in the schedule, and operations necessary or incidental to those premises, or the project of the schedule. At the time of Lorenzo's food poisoning, Reza's Oakbrook was not included in the Policy's schedule of 15 designated premises. Capitol argued that because Reza's Oakbrook was not on the schedule of the Policy, it had no duty to defend. Lorenzo maintained that the language of her underlying complaint alleged facts potentially within the Policy's coverage and, thus, Capitol was obliged to defend.

On December 29, 2008, Capitol filed a motion for summary judgment on its counter-complaint, to which Lorenzo responded and filed her own cross-motion for summary judgment on the complaint. The trial court granted Lorenzo's cross-motion for summary judgment, finding that Lorenzo's language in the underlying complaint was ambiguous as to location because it contained open-ended temporal language like "on and prior to March 28, 2006," and also used words like "storing" and "distribution," which suggested actions that may have occurred at several of Persian Foods' premises, including some of those listed in the Policy's schedule. Capitol now appeals, arguing that it was clear from the face of the complaint that the alleged facts were outside Capitol's potential coverage.

## II. ANALYSIS

On appeal, Capitol argues that the trial court erred in granting Lorenzo summary

3

judgment because it was clear from the face of Lorenzo's underlying complaint that the alleged facts were outside Capitol's potential coverage. Lorenzo responds that the trial court correctly granted summary judgment in her favor because the language in her complaint brought the alleged facts within Capitol's potential coverage.

## A. Standard of Review

Summary judgment is granted when the pleadings, affidavits, and depositions on file reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 193 Ill. App. 3d 1087, 1092-93 (1989). The right to summary judgment must be clear beyond question, and an order granting summary judgment must be reversed if a reviewing court determines that questions of material fact exist or that the judgment for the movant was incorrect as a matter of law. Wilkin, 193 Ill. App. 3d at 1093. We review a grant of summary judgment *de novo*. Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 349 (1998).

## B. Coverage

Under Illinois law, an insurer has an obligation to defend its insured in an underlying lawsuit if the complaint in the underlying lawsuit alleges facts potentially within the coverage of the insurance policy, even if the allegations end up being groundless, false, or fraudulent. General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co., 215 Ill. 2d 146, 154-55 (2005). To determine if the underlying suit alleges a situation potentially within the insurance coverage, the court compares the bare allegations of the complaint to the relevant provisions of the insurance policy. Midwest Sporting Goods, 215 Ill. 2d at 155. If any theory of

4

recovery in the underlying complaint falls within the insurance coverage, the insurer will have a duty to defend. Midwest Sporting Goods, 215 Ill. 2d at 155. "The threshold a complaint must meet to present a claim for potential coverage, and thereby raise a duty to defend, is minimal." Chandler v. Doherty, 299 Ill. App. 3d 797, 802 (1998); West Bend Mutual Insurance Co. v. Sundance Homes, Inc., 238 Ill. App. 3d 335, 337-38 (1992). Any doubts about potential coverage and the duty to defend are to be resolved in favor of the *insured*." (Emphasis in original.) Chandler, 299 Ill. App. 3d at 802; West Bend, 238 Ill. App. 3d at 338. "The duty to defend is not annulled by the knowledge on the part of the insurer the allegations are untrue or incorrect or the true facts will ultimately exclude coverage." Chandler, 299 Ill. App. 3d at 802.

Thus, "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage." Midwest Sporting Goods, 215 Ill. 2d at 154. "Absent absolute clarity on the face of the complaint that a particular policy exclusion applies, there exists a potential for coverage and an insurer cannot justifiably refuse to defend." Novak v. Insurance Administration Unlimited, Inc., 91 Ill. App. 3d 148, 151 (1980). Therefore, the issue before this court is whether it is clear from the face of Lorenzo's underlying complaint that the allegations she set forth fail to state facts which bring the case potentially within Capitol's coverage, thus justifying Capitol's refusal to defend.

Capitol argues that it justifiably refused to defend because the only location explicitly referred to in Lorenzo's complaint was Reza's Oak Brook, and Reza's Oak Brook was not one of

No. 1-09-1862

the 15 premises specified in the Policy's schedule of covered locations.

Lorenzo admits that Reza's Oak Brook is the only specific location referred to in the complaint, but counters that due to the general language of her complaint any of the 15 locations listed in the Policy could have been implicated, thus bringing the complaint potentially within Capitol's coverage and thereby triggering Capitol's duty to defend. Specifically, Lorenzo relies on the fact that her complaint alleges that "[o]n and prior to March 28, 2006," defendant did "process, prepare, distribute, sell and/or otherwise place into the stream of commerce certain foods, including a family style platter which included chicken, for purchase by the consumer public."

Lorenzo contends that such "on and prior" language suggests that the tainted chicken was handled at one of the other 15 locations before being delivered to Reza's Oak Brook, where it was ultimately sold to Lorenzo. Lorenzo points to the fact that the schedule at issue in the Policy does not indicate what sort of facility occupies each of the 15 listed addresses, and thus it would be reasonable to presume that one or more of those facilities were used for storage and/or the preparation of food prior to delivery at Reza's restaurants. Lorenzo argues that these ambiguities must be construed in her favor as the insured, and that because it is not absolutely clear from the face of her complaint that her allegations fail to state facts which bring the case within Capitol's coverage, Capitol at least had a duty to defend. See Midwest Sporting Goods, 215 Ill. 2d at 154 (an insurer may not justifiably refuse to defend unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case potentially within the insured's policy coverage). We disagree. Rather, we find that the

6

No. 1-09-1862

allegations set forth in Lorenzo's complaint, compared with the relevant policy provisions, did not trigger Captiol's duty to defend or indemnify.

We reiterate that in determining whether there is a duty to defend, an insurer is limited to comparing the bare allegations of the complaint with the face of the insurance policy. Chandler, 299 Ill. App. 3d at 801-02. The relevant bare allegations of Lorenzo's complaint state:

> "2. That at all times relevant herein, Defendant REZA'S, was engaged in the preparation, production and processing of certain foods, including chicken, for consumption at a certain restaurant known as Reza's Restaurant and Catering, located at or near *40 N. Tower Road, in the Village of Oak Brook, County of Cook, State of Illinois*.
>
> 3. That on and prior to March 28, 2006, Defendant REZA'S did process, prepare, distribute, sell and/or otherwise place into the stream of commerce certain foods, including a family style platter which included chicken, for purchase by the consumer public.
>
> 4. That on March 28, 2006, Defendant REZA'S did distribute, process and/or sell the aforementioned family style platter, including chicken, to the Plaintiff Nancy Lorenzo in the *Village of Oak Brook, County of Cook, State of Illinois*."
> (Emphasis added.)

No. 1-09-1862

Those bare allegations must be compared with the face of the insurance policy at issue. Here, Capitol's insurance policy states:

"Description of Premises and Operations:

\*\*\*

With respect to 'bodily injury' or 'property damage' arising out of 'your products' manufactured, sold, handled or distributed:

1. On, from, or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conduct by you or on your behalf.

\*\*\*

'Products-completed operations hazard':

a. Includes all 'bodily injury' and 'property damage' that arises out of 'your products' if the 'bodily injury' or 'property damage' occurs after you have relinquished possession of those products."

The Policy then lists a "Locations Schedule," which includes 15 addresses throughout Illinois including Chicago, Winnetka, and Wadsworth. Reza's Oak Brook did not appear on such schedule at the time of the incident.

Looking at the above language of Lorenzo's complaint, compared to the face of the

insurance policy, we find that there were no set of facts alleged which would potentially bring this case within Capitol's insurance policy. We are unwilling to read the words "processed," "stored," "distributed," and "sold" so broadly as to encompass any possible location listed in the insurance policy, especially in light of the fact that Lorenzo specifically identified the location at which she was injured. We find that it is absolutely clear, based on the allegations of the complaint, that Lorenzo sustained her injury at Reza's Oak Brook; and because Reza's Oak Brook is clearly excluded from the list of locations covered by Capitol's policy, Capitol was justified in refusing to defend the underlying lawsuit.

The case of Chandler v. Doherty, 299 Ill. App. 3d 797 (1998), is instructive in the case at bar. In Chandler, the insured was involved in a car accident while driving a "replicar" that he had fashioned out of parts from other vehicles. Prior to the accident, the insured had attempted to add the replicar to his existing insurance policy. The insurance company informed the insured that due to the modifications the insured had made on the replicar, the vehicle was uninsurable. After the accident, claimant brought a personal injury suit against the insured, alleging that the insured had been negligently operating his "motor vehicle." The insurance company knew that the motor vehicle referenced in the complaint referred to the replicar and thus refused to defend the suit. However, the court in Chandler found that the threshold for a claim to present a potential for coverage was minimal and that any doubts about potential coverage should be resolved in favor of the insured. Thus, the court found that even though the insurance company knew that the replicar was the car involved in the accident, which was not covered by its insurance company, it had a duty to defend due to the ambiguous reference of "motor vehicle"

9

which could have referred to the insured's other vehicle that was covered by the policy. Chandler, 299 Ill. App. 3d at 801-02. In other words, identifying the specific motor vehicle that was involved in the accident would have clearly determined whether the insurance company had a duty to defend. However, because the complaint only referred to a general motor vehicle, coverage was construed in the insured's favor.

Conversely in the case at bar, where the location of the injury determined whether Capitol had a duty to defend, the complaint unambiguously identified Reza's Oak Brook as the location where Lorenzo sustained her injury. Because Reza's Oak Brook did not appear in the Policy at the time of the incident, and thus it was clearly excluded from the face of the Policy, we find that Capitol justifiably refused to defend the underlying lawsuit. See Novak, 91 Ill. App. 3d at 151 ("Absent absolute clarity on the face of the complaint that a particular policy exclusion applies, there exists a potential for coverage and insurer cannot justifiably refuse to defend").

## IV. CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and enter judgment in favor of defendant.

Judgment reversed; judgment entered in favor of defendant.

TOOMIN, P.J., and LAVIN, J., concur.